**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
Orlando Division
Case No.:

| |
|---|
| WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>ROBERT KASPRZYK, an individual and resident of the State of California; and PAULA KASPRZYK, an individual and resident of the State of California,<br><br>      Defendants. |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO") and Wyndham Vacation Resorts, Inc. ("WVR") (collectively, "Plaintiffs" or "Wyndham"), through counsel and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants Robert Kasprzyk ("Kasprzyk") and Paula Kasprzyk ("Mrs. Kasprzyk") (collectively, the "Kasprzyk Defendants" or "Defendants") for damages and injunctive relief, and state as follows:

## I.    INTRODUCTION

1.    This action seeks to put an immediate stop to an unlawful scheme to defraud Wyndham and Wyndham Owners to the damage and detriment of Wyndham specifically.

2.    This is an action by Wyndham, a global leader in the hospitality and vacation ownership industry, which entrusted its confidential information in Defendant Kasprzyk, a former employee, based on his written promise and contractual agreement to safeguard that information. Wyndham granted Kasprzyk access to Wyndham's valuable prospective customer/owner and

existing customer/owner information, trade secrets which Wyndham uses to operate its business to the competitive advantage over others. Kasprzyk betrayed that trust by misappropriating Wyndham's confidential information for the Defendants' own and sole benefit, directly harming Wyndham, and exploiting Wyndham customers/owners.

3.    Although Kasprzyk used information acquired solely through his employment with Wyndham, Kasprzyk's fraudulent activities were wholly outside the scope of his employment. Indeed, Wyndham expressly denounces such fraud. Nevertheless, Kasprzyk unlawfully used Wyndham's name and reputation to provide a false sense of legitimacy to his fraudulent scheme by pretending to provide services as a Wyndham employee, in some instances, even after his employment was terminated.

4.    Ultimately, this is an action about how Kasprzyk breached his contractual obligations to Wyndham and, together with Mrs. Kasprzyk, conspired to interfere with Wyndham's business relationships with its customers. As a result of the Defendants' unlawful acts, Wyndham is now incurring, and is likely to incur in the future, tangible and intangible damages due to its expenditure of resources, in cash and in kind, in an effort to make its defrauded customers whole, for the purposes of preserving its reputation and goodwill in its customer relationships. This is an action to arrest the Kasprzyk Defendants' conspiratorial scheme for the sake of Wyndham and its defrauded customers.

## II.    PARTIES, JURISDICTION, AND VENUE

### A.    <u>The Plaintiffs</u>

5.    Plaintiff Wyndham Vacation Ownership, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

6. Plaintiff Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

**B.** **The Defendants**

7. Robert Kasprzyk is an individual and resident of the State of California and may be found at 42044 Cinnamon Lane Temecula, CA 92591.

8. Paula Kasprzyk is an individual and resident of the State of California and may be found at 42044 Cinnamon Lane Temecula, CA 92591.

**C.** **Subject Matter Jurisdiction**

9. This Court has subject matter jurisdiction over the claims based on federal question sounding in the Lanham Act, pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has subject matter jurisdiction over the claims sounding in state law pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

10. This Court has subject matter jurisdiction over the claims brought herein pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332 as there is complete diversity between the Plaintiffs and the Defendants and the amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00) exclusive of attorneys' fees and costs, and the value associated with the injunctive relief sought exceeds $75,000 exclusive of attorneys' fees and costs. Additionally, Plaintiffs' losses, costs (including costs of investigation), and expenses, which Plaintiffs have an indemnification right to, also exceed $75,000 exclusive of attorneys' fees and costs.

**D.** **Personal Jurisdiction**

11. This Court has personal jurisdiction over the Defendants for the following reasons:

a.   Defendants interfered with Wyndham's business in the State of Florida, which involves the repeated use of the wires and mails to transmit correspondence and other items into the State of Florida;

b.   Defendants committed acts and torts which caused injury to Plaintiffs in Florida;

c.   Kasprzyk breached his employment contract with Wyndham Vacation Ownership, Inc., whose principal place of business is in Florida;

d.   Defendants' actions, as more fully described herein below are, upon information and belief, directed at consumers regardless of state of residency, which may include residents of Florida.

**E.**     **Venue**

12.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because Plaintiff maintains its principal place of business in this District, Defendants ultimately harm Wyndham in Florida, Defendants' conduct giving rise to the claims set forth herein are related to property interests of Wyndham which maintains its principal place of business in this District, and this Court has personal jurisdiction over the Defendants.

**F.**     **Conditions Precedent**

13.     All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

**III.    SPECIFIC FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.**     **Background of Wyndham's Timeshare Business**

14.     Timeshare properties, also known as vacation rentals, revolutionized the vacation and travel industry and have been a popular option for families for decades. Prior to the inception of the timeshare industry in the United States, anyone wanting to vacation in the same destination

4

each year faced the limited options of (a) booking a hotel in advance and paying the daily rate (assuming availability) or (b) purchasing a vacation property (a significant financial investment with ongoing obligations of care, repair, and maintenance).

15.     Now, developers like Wyndham can divide a single vacation unit between numerous owners, with each owner purchasing a fractional interest of the whole for a specified share of the total price, i.e., deeded ownership. Developers, like Wyndham, also sell membership interests to consumers in the form of points, which, in turn, are exchanged for use at Wyndham properties. Wyndham Owners may also belong to a Wyndham program called "Club Wyndham Plus," which allows owners to use their ownership at Wyndham resorts to stay at additional properties, further expanding consumers' choices. This concept has allowed consumers an incredible opportunity to enjoy regular vacation at a fraction of the typical cost and without the burdens associated with undivided vacation property ownership.

16.     Wyndham is a global leader in the hospitality and vacation ownership industry with properties and a network spanning the world, and Wyndham Vacation Ownership, Inc. is the parent company of many entities that conduct timeshare sales and development activities throughout the United States.

17.     In a highly competitive market, Wyndham's success is dependent on its ability to develop and maintain customer relationships and its efforts to compile, organize and analyze prospective and existing customer information to effectively utilize such information to serve the needs of its customers/owners. This can only be achieved by keeping such prospective customer information secret from its direct competitors, as well as those individuals and entities that conspire to defraud Wyndham Owners.

18.     Over the years, Wyndham has compiled highly valuable information about its prospective and existing customers/owners. In addition, Wyndham has developed other types of confidential and proprietary information and materials, including pricing information. To keep its competitive advantage, Wyndham invests substantial time, effort, and expenses in organizing, analyzing, using and maintaining confidential and proprietary business information.

19.     To protect its proprietary and confidential information, Wyndham's policies and procedures require its employees to maintain the confidentiality of Wyndham's trade secrets. Upon hiring, Wyndham sales employees execute an employment agreement, which expressly prohibits the employees from disclosing or misusing Wyndham's trade secrets or other confidential and proprietary information, and prohibits disclosure or use of Wyndham's trade secrets to contact or solicit a customer or owner of Wyndham with whom the sales employee dealt during employment, outside of their employment with Wyndham, including after the termination of their employment.

**B.      Wyndham's Timeshare Contracts**

20.     Individuals who purchase timeshare interests through Wyndham (the "Wyndham Owners") enter into valid and binding purchase agreements, also referred to as the Timeshare Contracts.

21.     At the time Wyndham Owners purchase timeshares from Wyndham, the Wyndham Owners execute the Timeshare Contracts wherein the Wyndham Owners agree to pay an amount certain for a timeshare interest, as well as maintenance and/or annual fees to Wyndham for the upkeep of the timeshare units and common areas of the timeshare properties.

22.     Once they enter into a Timeshare Contract, Wyndham Owners have the option to purchase additional Wyndham benefits, including points, elevated membership status, and additional property interests, as well as the option to list unused vacation time for rental.

C.    **Kasprzyk's Employment Agreement**

23.    Wyndham employs sales personnel to inform individuals who wish to purchase timeshare interests through Wyndham at informational Wyndham sales presentations (a "Salesperson"). Salespersons have personal knowledge of the Timeshare Contracts signed by Wyndham Owners whom they assist at informational Wyndham sales presentations. Salespersons would not have access to Wyndham Owners or related confidential information but for the trust and confidence placed upon them by Wyndham in dealing with its customer base.

24.    Kasprzyk was hired as a Salesperson. During his employment at Wyndham, Kasprzyk had access to and used Wyndham's trade secrets and other confidential and proprietary information, including, pricing information; mailing lists; client information; individually negotiated contract terms with specific customers/owners; and other such information. Through his employment with Wyndham, Kasprzyk became intimately aware of Wyndham's existing and prospective customers/owners, including their names and addresses, contact persons, their particular needs and requirements, and the other types of information described above.

25.    As a condition of his employment, Kasprzyk agreed to abide by a Sales Integrity Manual and signed an employment agreement that contains provisions restricting him from disclosing or misusing Wyndham's confidential information and/or exploiting information acquired through his employment at Wyndham to solicit Wyndham's prospective or existing customers/owners for his own business purposes. Such provisions are designed to, among other things, protect Wyndham and Wyndham Owners (including prospective Wyndham Owners).

26.    Section 5 of the most recent employment agreement, signed by Kasprzyk on October 15, 2020 (the "Employment Agreement"), provides:

> *Disclosure of Information.* Salesperson agrees and acknowledges that, as an employee of WVO, Salesperson will be given or be privy to certain

valuable, proprietary or confidential information and trade secrets which are the sole property of WVO not available to the general public from directories or other public sources, but have been developed, acquired or compiled by WVO at its great effort and expense, including but not limited to sales, marketing, and training materials and information, product pricing data and strategies, and prospective customer/owner or existing customer/owner lists. Salesperson agrees and acknowledges that disclosing, divulging, revealing or other use of any such proprietary or confidential information and trade secrets, other than in connection with WVO's business, will be highly detrimental to the business of WVO and serious loss of business and pecuniary damage may result therefrom. Accordingly, Salesperson specifically covenants and agrees to hold all of such proprietary or confidential information and trade secrets and any documents containing or reflecting the same in the strictest confidence, and except in the normal course of Salesperson's duties hereunder, Salesperson shall not, while employed by WVO or at any time thereafter, copy or disclose any such information to any person or entity for any reason or purpose, nor shall Salesperson utilize such information. Salesperson agrees that immediately upon termination of Salesperson's employment with WVO all such property, information and data, including any copies, recordations (whether in written or electronic form) or abstracts thereof, shall be returned to WVO.

Because WVO's damages from any violation of this paragraph would be impracticable and extremely difficult to determine, the liquidated amount of damages presumed to be sustained from each such breach will be $15,000. That sum is agreed on as compensation for the injury suffered by WVO, and not as a penalty. In addition, WVO shall be entitled to injunctive relief as well as any remedy available at law, including reasonable attorney's fees incurred in obtaining such relief.

27.    Section 10 of the Employment Agreement provides:

*Covenant Not to Solicit.* To the extent permitted by applicable law, Salesperson agrees that during employment and … for a period of twenty-four (24) months after Salesperson's termination of employment … whether such termination is at Salesperson's or WVO's initiative and whether for cause or without cause or with or without notice, Salesperson will not, for himself/herself or for any person, firm, business, corporation or other entity with which he/she is or may become associated in any capacity, engage in any of the following: … (ii) use WVO's trade secrets or other unfair business practices to contact, solicit, suggest, persuade, or attempt to persuade any individual or entity that is a customer of or owner with WVO with whom Salesperson dealt during employment with WVO or of whom Salesperson obtained confidential information regarding during employment to discontinue his, her, or its relationship with WVO; (iii) use WVO's trade secrets or other unfair business practices to contact, solicit, suggest, persuade, attempt to persuade, or identify for sales or marketing purposes

any person whom Salesperson, as a result of his/her employment with WVO, met, communicated with, contacted, identified, or whose identity became known to Salesperson as a potential purchaser of timeshare, vacation club or related products or services (i.e. customers and prospective customers) for the establishment of any business or contractual relationship relating to the purchase of timeshare, vacation club or related services, and (iv) contact, solicit, suggest, persuade, or attempt to persuade any persons or entities with which WVO has contracted to provide goods or services to discontinue their relationship with WVO.

29.     Similarly, Section 4 of the Employment Agreement provides:

*Limitation on Outside Activities.* Salesperson shall report to his/her supervisor outside employment or business activity, whether or not such activity is pursued for gain, profit or other consideration, and shall not, without the express written approval of WVO, engage in any such outside business activity reasonably related to WVO's actual or potential business activities. This prohibition includes, but is not limited to, any business activity involving the sale or resale of a timeshare interest, other than Salesperson's personal interest, regardless of whether such interest is defined as points, weeks, and fractionals or by any other term.

30.     Section 6 of the Employment Agreement provides:

*Indemnification.* Salesperson agrees to protect, defend and indemnify WVO, to the full extent permitted by applicable law, for all losses, costs, liabilities, claims (including costs of investigation), refunds, fines, damages or expenses, including attorneys' fees and expenses, which WVO may incur in consequence of any act or omission by Salesperson: (a) in violation of any provision of this Agreement; (b) which constitutes a material misrepresentation by Salesperson; and/or (c) which constitutes any violation of law.

31.     Section 13 of the Employment Agreement provides:

*Remedies for Breach.* In the event of a breach or threatened breach of any provision hereof by Salesperson and in addition to all other remedies available at law or in equity, including but not limited to the right to recover damages sustained as a result of Salesperson's breach, WVO shall be entitled to an injunction against such breach, without the requirement to post a bond or other security (to the extent permitted by applicable law) or to prove irreparable injury or inadequate remedy at law. The Court may also award reasonable attorney's fees and costs to WVO in any action brought to enforce the terms of this Agreement.

32.    At all material times, including through termination of Kasprzyk's employment with Wyndham, the Employment Agreement was, and currently is, binding as to Kasprzyk and Wyndham, allowing for the enforcement of rights and liabilities from breach thereof.

**D.    Kasprzyk's Breach of Contract**

33.    In late 2020, after completing sales to two sets of Wyndham Owners, Kasprzyk utilized Wyndham's proprietary information (i.e., the customer's contact information obtained during the course and scope of Kasprzyk's employment with Wyndham) to contact those Wyndham Owners directly and outside of the scope of his employment and role with Wyndham. This use of confidential information is in violation of Section 5 of the Employment Agreement.

34.    In November 2020, Kasprzyk told one of the Wyndham Owners ("Owner 1") that he could help to rent out the Wyndham points that Kasprzyk sold him, and solicited a business relationship with him related to Kasprzyk's "side rental business."



*(November 19, 2020 iMessage correspondence between Kasprzyk and Owner 1).*

That solicitation was in violation of Sections 4 and 10 of the Employment Agreement.

35.    In December 2020, Kasprzyk told the second set of Wyndham Owners that he met earlier in the year through his employment with Wyndham ("Owner 2") that he could sell them deeded Wyndham points which Kasprzyk claimed to have acquired "from various owners"

through his side "real estate business," contemporaneously offering an elevated status through a Wyndham VIP program. Kasprzyk also claimed he could sell Owner 2 a Wyndham deeded property, with a "clean" deed, and solicited a business relationship with Owner 2.



*(December 4, 2020 iMessage correspondence between Kasprzyk and Owner 2).*

This solicitation is also in violation of Sections 4 and 10 of the Employment Agreement.

36.    On December 4, 2020, Kasprzyk and Owner 2 entered into a written agreement (the "December 4 Agreement") to memorialize the terms of the offered business transactions. *See* Exhibit A.

37.    The December 4 Agreement set out a payment schedule pursuant to which Owner 2 would pay $23,000 directly to Kasprzyk via Venmo in exchange for an alleged deeded timeshare contract with Wyndham that Kasprzyk claimed to be offering at a better price than that which Owner 2 would be able to get through Wyndham. Through text messages with Owner 2, Kasprzyk claimed that the deeded contract would not have the restrictions usually placed on a resale contract because they would go "through Wyndham for deeding." Such misrepresentation caused Owner 2 to confuse Kasprzyk's true affiliation, ultimately allowing Kasprzyk to win Owner 2's trust, and to divert payments meant for Wyndham to the Defendants.



(*Continued December 4, 2020 iMessage correspondence between Kasprzyk and Owner 2*).

38.    Kasprzyk and Owner 2 entered into a second agreement on December 20, 2020 (the "December 20 Agreement") in which it is acknowledged that Owner 2 had already paid Kasprzyk

$20,000 for which Kasprzyk agreed to provide the alleged deeded Wyndham timeshare contract. *See* Exhibit B.

39.     Kasprzyk and Owner 2 entered into a third agreement on July 20, 2021 (the "July 20 Agreement") (the December 4, December 20, and July 20 Agreements are collectively referred to as the "Owner 2 Agreements") in which Owner 2 agreed to pay an additional $15,000 directly to Kasprzyk and Kasprzyk agreed to provide Owner 2 with an additional alleged 200,000 deeded Wyndham timeshare points. $2,000 more dollars were to be paid by Owner 2 upon recordation of all deeds. *See* Exhibit C.

40.     Ultimately, upon information and belief, Owner 2 paid the Defendants $35,000, with $13,000 cash picked up by both Defendants at Owner 2's place of business.

41.     Upon information and belief, no points or deeded contracts were ever delivered to Owner 2 by Kasprzyk pursuant to the Owner 2 Agreements.

42.     Kasprzyk also wrote two personal checks to Owner 2 for alleged repayment. Upon information and belief, the checks were worthless and ultimately bounced. Thus, no money was returned to Owner 2 by Kasprzyk.

43.     On December 19, 2020, Kasprzyk and Owner 1 entered into a written Loan Agreement under which Owner 1 agreed to provide Kasprzyk with $7,500 (the "Loan Agreement") that was intended to secure rental inventory Kasprzyk claimed to have available to him through his "side rental business." *See* Exhibit D. These arrangements are in violation of Section 4 of the Employment Agreement.

44.     The Loan Agreement, which memorialized a transaction agreed to via iMessages, promised a return on investment to Owner 1 of $5,000 to be repaid in full by January 15, 2021.



(*Continued November 19, 2020 iMessage correspondence between Kasprzyk and Owner 1*).

45.    Owner 1 ultimately paid the monies for the benefit of the Defendants' scheme directly to Mrs. Kasprzyk at the direction of Kasprzyk:



(*Continued November 19, 2020 iMessage correspondence between Kasprzyk and Owner 1*).

46.    After the initial payment, Kasprzyk continued to provide Owner 1 with alleged opportunities to make a return on investment, which induced Owner 1 to pay Kasprzyk more money.



(*November 30, 2020 iMessage correspondence between Kasprzyk and Owner 1*).



(*December 1, 2020 iMessage correspondence between Kasprzyk and Owner 1*).

47.    On or about April 8, 2021 and May 21, 2021 Kasprzyk delivered two promissory notes to Owner 1 promising to pay Owner 1 $35,000 under two different payment schedules. *See* Composite Exhibit E.

48.    Upon information and belief, Owner 1 paid Kasprzyk roughly $18,000 and was repaid $4,999.

49.    Kasprzyk continued to communicate with both Owners regularly over text message even after his employment with Wyndham concluded in February of 2021. Accordingly, Kasprzyk did not return or destroy Wyndham's proprietary information upon the termination of his employment with Wyndham in violation of Section 10 of the Employment Agreement.

50.    Upon information and belief Kasprzyk continued to communicate with at least one set of owners as if he was still affiliated with and/or employed by Wyndham.



*(April 15, 2021 iMessage correspondence between Kasprzyk and Owner 2).*

51.     Each of the above communications and solicitations were also in direct violation of Wyndham's policies, procedures, and training manuals, which Kasprzyk acknowledged to have read, understood, and abide by upon hire, including Wyndham's Sales Integrity Manual.

**D.      Defendants' Unlawful Scheme**

52.     Together, the Defendants engaged in an unlawful scheme to defraud Wyndham Owners.  At this juncture, the full breadth of the scheme is being investigated and cannot be fully known.

53.     At the center of this scheme is Kasprzyk. By using Wyndham's name and reputation, as well as his knowledge of confidential Wyndham information, Kasprzyk misrepresents his affiliation with Wyndham and alleges he can provide a Wyndham benefit and/or Wyndham property to Wyndham Owners, directly. Additionally, Kasprzyk knowingly uses his affiliation with Wyndham, as well as Wyndham's name, reputation, and goodwill, to manipulate Wyndham Owners into believing there is legitimacy to the scheme, including his "side rental business." But for such false representations, Kasprzyk's scheme would fail.



(*March 27, 2021 iMessage correspondence between Kasprzyk and Owner 1*).

54.     Kasprzyk also claims he can exploit these Wyndham Owner's Wyndham property interests for profit. In the process, he demands the Wyndham Owner pay him the monies meant for Wyndham benefits or "rental services" otherwise attainable through Wyndham – depriving Wyndham from such payments.

55.     These Wyndham Owners arrange for the transaction, including wire transfers and cash payments of tens of thousands of dollars – meant for Wyndham's benefits – to Kasprzyk. Together, the Kasprzyk Defendants collect such payments, completing the conspiracy. Specifically, upon information and belief, Mrs. Kasprzyk received wired funds directly into her bank account.

56.     As part of the scheme, the Defendants sign "promissory notes" to give the defrauded Wyndham Owners a false sense of hope that either the benefits or a return of their money is forthcoming. However, in every known instance, the Defendants do not provide the Wyndham Owners with any benefit. The Defendants also largely failed to return the payments.

57.     By engaging in sales practices that did not comply with Wyndham's polices and standards, Kasprzyk deliberately engaged in sales practices he knew were inappropriate in order to create consumer complaints against Wyndham and force Wyndham to have to take actions to

protect its business and reputation, as well as to resolve consumer complaints deliberately created by Kasprzyk.



*(November 19, 2020 iMessage correspondence between Kasprzyk and Owner 1).*

58.    In the end, not only is Wyndham harmed due to the Defendants interference with its contractual relations but, in some cases, Wyndham is also left to compensate these defrauded Wyndham Owners for the Defendants' violation of law and misconduct.

**COUNT I**
**Breach of Contract**
(against Kasprzyk)

59.    Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.    This is an action for breach of contract.

61.    Kasprzyk entered into an Employment Agreement with Wyndham.

62.    Wyndham has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of such agreement, except for those conditions and covenants for which performance by Wyndham was excused.

63.    Kasprzyk has breached the conditions, covenants, promises and obligations required of his employment agreement and other contractual obligations.

64.    Specifically, Kasprzyk breached Section 4 (*Limitation on Outside Activities*), Section 5 (*Disclosure of Information*), and Section 10 (*Covenant Not to Solicit*) of the Employment

Agreement, triggering Wyndham's rights under Sections 6 (*Indemnification*) and 13 (*Remedies for Breach*) of the Employment Agreement.

65.     As a proximate result of Kasprzyk's breach of contract, Wyndham has been irreparably injured and has suffered compensatory, liquidated, consequential, incidental, and other damages in an amount to be determined at trial. Because Wyndham is likely to succeed on the merits of its claims, has suffered irreparable harm, and its remedy at law is inadequate, Wyndham also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Kasprzyk. Such injunctive relief is supported by the balance of equities related to Wyndham's claims and is in the public interest.

<u>Count II</u>
<u>Breach of Implied Covenant Of Good Faith And Fair Dealing</u>
(against Kasprzyk)

66.     Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

67.     This is an action for breach of implied covenant of good faith and fair dealing.

68.     The agreement between Wyndham, on the one hand, and Kasprzyk, on the other hand, contained an implied covenant of good faith and fair dealing. Such implied covenants obligated Kasprzyk to refrain from doing any act that would deprive Wyndham of the benefits of agreements.

69.     Kasprzyk has deprived Wyndham of the benefit of the agreements with its owners.

70.     As a proximate result of Kasprzyk's conduct, Wyndham has been irreparably injured and has suffered compensatory damages, which were reasonably foreseen by the parties upon contracting, in an amount to be proven at the time of trial. Because Wyndham is likely to succeed on the merits of its claims, has suffered irreparable harm, and its remedy at law is

inadequate, Wyndham also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Kasprzyk. Such injunctive relief is supported by the balance of equities related to Wyndham's claims and is in the public interest.

**Count III**
**Breach of Duty of Loyalty**
(against Kasprzyk)

71.     Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

72.     This is an action for breach of duty of loyalty.

73.     During his employment, Kasprzyk used Wyndham's confidential information for his own benefit, including in direct competition with Wyndham.

74.     Upon information and belief, as Kasprzyk was planning his departure from Wyndham, Kasprzyk undertook a scheme to further harm Wyndham by engaging in sales practices that did not comply with Wyndham's polices and standards.

75.     Upon information and belief, Kasprzyk deliberately engaged in sales practices he knew were inappropriate in order to create consumer complaints against Wyndham and force Wyndham to have to take actions to protect its business and reputation, and to resolve consumer complaints deliberately created by Kasprzyk.

76.     Kasprzyk breached his duty of loyalty to Wyndham by utilizing Wyndham's trade secrets against Wyndham and by using improper sales tactics in an effort to harm Wyndham.

77.     Wyndham has suffered damages including attorneys' fees, costs, and pre- and post-judgment interest, as a result thereof.

## COUNT IV
## <u>Contractual Indemnification</u>
### (against Kasprzyk)

78.    Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

79.    This is an action for contractual indemnification.

80.    Kasprzyk entered into an Employment Agreement with Wyndham.

81.    The Employment Agreement expressly stated that WVO was an indemnified party.

82.    The Employment Agreement covenanted to indemnify WVO for all losses, claims (including costs of investigation), and damages or expenses, including attorneys' fees and expenses, which WVO could incur resulting from Kasprzyk's activities.

83.    Wyndham has incurred significant expense, and will continue to incur significant expense, arising out of the Kasprzyk's breach of contract and resulting scheme.

84.    An actual controversy exists of sufficient immediacy and reality between Wyndham and Kasprzyk as to Kasprzyk's duty to indemnify Wyndham pursuant to the Employment Agreement.

85.    Wyndham is entitled to indemnification from Kasprzyk pursuant to the Employment Agreement for all losses incurred by Wyndham arising from his breach of contract and scheme, as well as a declaratory judgment, pursuant to the Declaratory Judgment Act, against Kasprzyk for all losses to be incurred in the future by Wyndham arising from Kasprzyk's breach of contract and scheme.

## COUNT V
### Misappropriation of Trade Secrets, Florida's Uniform Trade Secrets Act
(against Kasprzyk)

86.     Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

87.     This is an action for violation of Florida's Uniform Trade Secret Act, § 688.001-688.009, Fla. Stat.

88.     Wyndham's confidential and proprietary information derives independent economic value, both actual and potential, from not being generally known to other persons or the public who can obtain economic value from their disclosure or use.

89.     Wyndham has engaged in efforts that were reasonable under the circumstances to maintain the secrecy of its confidential and proprietary information.

90.     Kasprzyk misappropriated Wyndham's trade secrets by acquiring, using, disclosing and/or intending to use or disclose Wyndham's trade secrets in violation of Florida's Uniform Trade Secret Act.

91.     As the direct and proximate result of Kasprzyk's misappropriation of Wyndham's trade secrets, Wyndham has suffered irreparable injury and damages in an amount to be proven at the time of trial. Because its remedy at law is inadequate, Wyndham seeks preliminary and permanent injunctive relief to recover and protect its trade secrets and other legitimate business interests.

92.     At all times herein alleged, Kasprzyk's acts were willful and malicious, and were done with a conscious disregard of Wyndham's rights, in that Kasprzyk misappropriated Wyndham's confidential, proprietary and/or trade secret information intentionally and knowingly

and with a deliberate intent to injure Wyndham's business. Therefore, Wyndham is entitled to an award of punitive exemplary damages and attorney's fees pursuant to § 688.004-688.005, Fla. Stat.

## COUNT VI
## Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(against Kasprzyk)

93.     Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

94.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

95.     Kasprzyk has used, in connection with the promotion of his alleged services, false designations of origin and false descriptions and representations, including words which falsely describe or represent such services.

96.     Kasprzyk's use of Wyndham's name misrepresented the nature and quality of the services provided to the public.

97.     Kasprzyk uses false representations of affiliation with Wyndham to confuse Wyndham's customers as to his true affiliation, to win the customers' trust, and to divert payments meant for Wyndham to the Defendants. Kasprzyk continued to make such false representations even after his employment with Wyndham was terminated.

98.     Kasprzyk has caused such services to enter into commerce with full knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of Wyndham.

99.     Kasprzyk's use of the Wyndham name is likely to cause confusion, mistake, and deception among customers, prospective customers, and the public as to the source or sponsorship of Kasprzyk's services and/or Wyndham's services, and/or Kasprzyk's affiliation or relationship

with Wyndham, causing harm to Wyndham's reputation and goodwill, in violation of Lanham Act § 43(a) [15 U.S.C. § 1125(a)].

100.    Kasprzyk's statements were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for Defendants' own financial gain, for the purpose of influencing consumers to retain Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

101.    Kasprzyk's deception is material, in that it is likely to influence the consumers' decisions whether to pay Wyndham for its services/benefits.

102.    Moreover, Kasprzyk's false and/or misleading statements materially misrepresented Kasprzyk's services and what he could do for Wyndham Owners, all of which was designed to trick Owner 1 and Owner 2 into entering into a business relationship with Kasprzyk, thereby diverting payments from Wyndham to the Defendants.

103.    Wyndham has standing to bring this claim. A plaintiff has standing to sue when a defendant's misleading statements "seek[] to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product," thus "proximately caus[ing] the plaintiff's harm." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 139 (2014). "[T]he causal chain linking" a plaintiff's "injuries to consumer confusion [need] not [be] direct," but may include an "intervening link of injury," consistent with "[t]raditional proximate-causation principles." *See id.* at 138–39 (finding that the plaintiff had adequately alleged proximate cause establishing standing even where the defendant's misleading statements were not directly diverting business from plaintiff to defendant).

104.    Kasprzyk's misleading statements caused consumers to enter into a business relationship with Kasprzyk for false services and affected interstate commerce.

105.    Further, without Kasprzyk's false and/or misleading representations, the Wyndham Owners could have used Wyndham's legitimate services instead of the Defendants' false services, without causing Wyndham to incur fees to and without causing damage to Wyndham's goodwill and reputation.

106.    Wyndham has been and will continue to be damaged as a result of Kasprzyk's false representations, by the confusion of the market for Wyndham's goods and services, by the disruption of Wyndham's relationships with its customers, by the diversion of Wyndham's customers to Defendants, by Wyndham's lost royalties, in cash or in kind, by Wyndham's loss of control of the use of its brand in the market, and by damage to Wyndham's goodwill and reputation.

107.    Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover: (1) its actual damages; (2) Kasprzyk's profits resulting from his false representations to Wyndham Owners; and (3) the costs of this action. The court, pursuant to the discretion confided to it under this section of the Lanham Act, should consider enhancing these damages to compensate Wyndham fully for its losses.

108.    Because Wyndham is likely to succeed on the merits of its claims, has suffered irreparable harm, and its remedy at law is inadequate, Wyndham also seeks, pursuant to 15 U.S.C. § 1116, an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Kasprzyk. 15 U.S.C. § 1125(a). Such injunctive relief is supported by the balance of equities related to Wyndham's claims and is in the public interest. Given Kasprzyk's ongoing

efforts to defraud Wyndham's customers/owners, Kasprzyk is likely to continue to engage in such practices unless he is enjoined by this Court from further violations.

**COUNT VII**
**<u>Tortious Interference with Contractual and Business Relations</u>**
(against Kasprzyk)

109.    Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

110.    This is a cause of action for tortious interference with contractual and business relations.

111.    Wyndham has contractual and business relationships with the Wyndham Owners, including Owner 1, Owner 2, and other Wyndham Owners who will be discovered as Wyndham's investigation continues.

112.    Kasprzyk had actual, constructive, and/or specific knowledge of the contractual and business relationships between Wyndham and the Wyndham Owners. The very fact that Plaintiffs have a business relationship with the Wyndham Owners is the basis upon which Kasprzyk sought to establish a relationship with the Wyndham Owners.

113.    Kasprzyk utilized improper, fraudulent, and/or illegal means to interfere with Plaintiffs' contractual and business relations.

114.    Kasprzyk's actions were done with improper motive and not in good faith, but rather were done with the knowledge and predominant purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Kasprzyk's actions and without reasonable grounds for Kasprzyk to believe that his actions were justified and proper.

115.    As a direct and proximate result of Kasprzyk's intentional misconduct, Wyndham's business relations have been disrupted and otherwise interfered with.

116.    Kasprzyk did not and does not have any justification or privilege in procuring the breach of such contractual and business relationships and his interference with Plaintiffs' business is willful and malicious.

117.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

118.    Kasprzyk's ongoing conduct has caused, and if not permanently enjoined, will continue to cause, irreparable harm to Wyndham due to the disruption of customer and other contractual relations; therefore, Wyndham does not have an adequate remedy at law to fully remedy the harm caused by Kasprzyk to Wyndham.

119.    Because Wyndham is likely to succeed on the merits of its claims, has suffered irreparable harm, and its remedy at law is inadequate, Wyndham also seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Kasprzyk. Such injunctive relief is supported by the balance of equities related to Wyndham's claims and is in the public interest. Given Kasprzyk's ongoing efforts to defraud Wyndham's customers/owners, Kasprzyk is likely to continue to engage in such practices unless it is enjoined by this Court from further violations.

120.    Kasprzyk's conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

## COUNT VIII
### Civil Conspiracy to Commit Tortious Interference
(against all Defendants)

121.    Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

122.   This is a cause of action for civil conspiracy to interfere with existing contractual and business relations.

123.   Defendants are parties to a civil conspiracy. Defendants had a common design, each having the intent and knowledge of the others' intent to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means. Both Defendants have benefitted from the scheme by receiving payments, jointly and individually, procured as a result of their unlawful acts.

124.   Defendants conspired to do an unlawful act to cause Plaintiffs harm. Defendants acted in concert with a common design, scheme, or plan to bring about a desired result and/or accomplish a preconceived plan for financial gain to the detriment of Plaintiffs through unlawful and/or illegal means of interfering with Plaintiffs' business relations with Wyndham Owners and/or causing Wyndham Owners to breach their Timeshare Contracts with Plaintiffs.

125.   Defendants committed or engaged in overt acts in furtherance of their unlawful conspiracy to interfere with Plaintiffs' business relations or to induce Plaintiffs' customers to breach their contractual agreements.

126.   Defendants conspired to interfere with Plaintiffs' contractual and business relationships with the Wyndham Owners and/or were directed by other Defendants to interfere with Plaintiffs' contractual and business relationships with the Wyndham Owners.

127.   Defendants each performed and/or were directed by other Defendants to perform one or more overt actions in furtherance of their conspiracy as set forth above.

128.   As a direct and proximate result of Defendants' intentional misconduct, Wyndham's business relations have been disrupted and otherwise interfered with.

129.    Defendants did not and do not have any justification or privilege in procuring the breach of such contractual and business relationships and his interference with Plaintiffs' business is willful and malicious.

130.    Each of the Defendants have a personal stake in the conspiracy activities as each was paid some amount of money as a result of his or her involvement in the conspiracy.

131.    As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

132.    Defendants, acting in concert, have engaged in an unlawful scheme to take advantage of timeshare owners and to cause Wyndham and its business tens of thousands of dollars in actual damages.

133.    Defendants acted willfully and with malice in taking these actions.

134.    Defendants are jointly and severally liable to Plaintiffs for Damages.

135.    Defendants' conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

## COUNT IX
## <u>Violation of Florida's Deceptive and Unfair Trade Practices Act</u>
(against Kasprzyk)

136.    Wyndham adopts and realleges paragraphs 1 through 58 above as if fully set forth herein.

137.    This is a cause of action for damages and permanent injunctive relief under Florida Statutes § 501.211.

138.    This cause of action is separate and apart from the causes of action premised upon Kasprzyk's Lanham Act violations. *Cf. Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332–33 (11th Cir. 2008) ("Since Natural Answers is unable to bring an unfair competition claim under the Lanham Act under the theory of either *false advertising or trademark*

*infringement*, it follows that the common law claims *based on unfair competition and trademark infringement* must fail as well." (emphasis added)). It is based not only on Defendants' false and misleading advertisements, but also on Kasprzyk's business practices as a whole, which are deceptive and unfair.

139.    Wyndham is a legitimate business enterprise under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

140.    Wyndham's owners and prospective owners are consumers for purposes of FDUTPA.

141.    Kasprzyk is engaged in trade or commerce as those terms are defined by FDUTPA.

142.    Kasprzyk is engaged in certain deceptive and unfair practices as set forth above, including but not limited to: (1) luring Wyndham Owners into procuring Defendants' illusory services; and (2) using misrepresentations to convince Wyndham Owners to pay substantial fees for such illusory Wyndham benefits, which such purported benefits Kasprzyk is not authorized to and cannot lawfully provide.

143.    Section 501.211(1) "permits a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future." *Wyndham Vacation Resorts, Inc. v. Timeshare Direct, Inc.*, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012).

144.    Under § 501.211(1), "anyone aggrieved" includes a broader class of complainants than merely consumers; the scope of the injunctive remedy is also greater than the actual damage remedy under § 510.211(2). *Id.*; *see also Kinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).

145.    Wyndham is a party aggrieved by Kasprzyk's violation of FDUTPA. *See* Fla. Stat. § 501.204(1).

146.    As a result of Kasprzyk's actions, Wyndham has suffered financial loss.

147.    Wyndham's losses will increase unless Kasprzyk is permanently enjoined from continuing his deceptive and unfair business practices.

148.    Wyndham is entitled to recover its attorney's fees and costs from Kasprzyk under Florida Statutes §§ 501.2105 and 501.211.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the Court enter final judgment in their favor and against Defendants, jointly and severally, for:

a.    Indemnification;

b.    Declaratory Relief pursuant to the Declaratory Judgment Act;

c.    Damages;

d.    Liquidated damages in the amount of $15,000.00 per violation of Section 5 of the Employment Agreement;

e.    Disgorgement of Defendants' profits;

f.    Together with interest thereon;

g.    An award of court costs;

h.    A determination that the instant civil action is an exceptional case and awarding Plaintiffs their attorneys' fees under the Lanham Act;

i.    An award of attorney's fees under the employment contract, Florida's Uniform Trade Secret Act, and FDUTPA;

j.    Entry of temporary and permanent injunctive relief against Defendants, as well as their agents, representatives, employees, and affiliates, prohibiting Defendants from publishing or contributing to any false and misleading statements or advertising any ability to provide Wyndham Owners with Wyndham benefits, or otherwise with any services prohibited by the Employment Agreement; and

k.    For such other and further relief as the Court deems appropriate.

Dated:  September 7, 2022

Respectfully Submitted,

*/s/Glennys Ortega Rubin*
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
Email: bbennington@shutts.com
Secondary Email: jclaudio@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
Email: grubin@shutts.com
Secondary Email: dreyes@shutts.com
**ADRIANA L. PFEIFFER, ESQ.**
Florida Bar No. 1018385
Email: apfeiffer@shutts.com
Secondary Email: wirvin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

*Attorneys for Plaintiffs*